UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 14-01852 JVS (JCGx)          Date   July 13, 2018

Title   Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Karla J. Tunis | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

Proceedings:   **(IN CHAMBERS )**
**Order Denying the City's Motion for Summary Judgment against Lynn House and Granting in Part and Denying in Part the City's Motion for Partial Summary Judgment against Yellowstone**

Before the Court are two motions.

Defendant City of Costa Mesa ("the City") filed a motion for summary judgment against California Women's Recovery, Inc. ("Lynn House"). (Mot., Docket No. 134.) Lynn House filed an opposition. (Opp'n, Docket No. 172.) The City replied. (Reply, Docket No. 189.)

For the following reasons, the Court **denies** the City's motion for summary judgment against Lynn House.

The City also moved for partial summary judgment against Yellowstone Women's First Step House, Inc. ("Yellowstone"). (Mot., Docket No. 140.) Yellowstone filed an opposition. (Opp'n, Docket No. 179.) The City replied. (Reply, Docket No. 190.)

For the following reasons, the Court **grants in part** and **denies in part** the City's motion for partial summary judgment against Yellowstone.

## I. BACKGROUND

Lynn House and Yellowstone (collectively, "Plaintiffs") operate sober living homes and have brought this action against the City because of an alleged "pattern or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 14-01852 JVS (JCGx)          Date   July 13, 2018

Title   Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa

practice of discrimination against them on the basis of disability" under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Civil Rights Act of 1871, California's Fair Employment and Housing Act ("FEHA"), and California Government Code §§ 11135 and 65008.  (See Fourth Amended Complaint ("FAC"), Docket No. 109.)

On October 21, 2014, the City enacted Ordinance No. 14-13 (the "Ordinance"), an amendment to Costa Mesa Municipal Code ("CMMC"), Title 13, which governs planning, zoning, and development in the City.  (See City's First Request for Judicial Notice ("RJN"), Docket No. 136, Ex. A.)  The CMMC establishes geographic districts for land use and prescribes permissible land uses within each district. For residences, the CMMC establishes several types of residential districts, including single-family (R-1).

The CMMC prohibits the operation of large boardinghouses in R-1 areas.[1]  But the Ordinance also excepts certain housing facilities that might otherwise be banned.  It does not subject licensed residential care facilities[2] and single housekeeping units[3] to additional limitations.  See CMMC § 13-311(a)(1).

Group homes[4] that are not single housekeeping units may operate in R-1 zones if

_____

[1] A "boardinghouse" is defined as "[a] residence or dwelling, other than a hotel, wherein rooms are rented under three or more separate written or oral rental agreements, leases or subleases or combination thereof, whether or not the owner, agent, or rental manager resides within the residence." CMMC § 13-6.  A "large" boardinghouse has three or more rooms being rented. Id.

[2] "Residential care facilities" are those facilities "licensed by the state where care, services, or treatment is provided to persons living in a supportive community residential setting."  CMMC § 13-6.

[3] The definition of single housekeeping unit is provided in section III(C)(2)(a) below.

[4] A "group home" is defined as "[a] facility that is being used as a supportive living environment for persons who are considered handicapped under state or federal law."  CMMC § 13-6.  Group homes do not include residential care facilities or homes that operate as a "single housekeeping unit." Id.  Any combination of two or more group homes qualifies as a "integral facility." Id.  The Ordinance establishes "a rebuttable presumption that integral facilities do not constitute single housekeeping units. Additional indicia that a household is not operating as a single housekeeping unit include but are not limited to: the occupants do not share a lease agreement or ownership of the property; members of the household have separate, private entrances from other members; members of the household have locks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

they obtain a special use permit ("SUP").  Id. § 13-311(a)(1)–(9).  Group homes must apply for the permit. Id.  To receive this permit the group home must comply with several regulations, most notably that the home must have six or fewer occupants, not including a house manager.  Id.  If the group home complies with these conditions then the permit must be issued as a "ministerial matter."  Id. § 13-311(b).

Sober living homes[5] ("SLHs") are a subset of group homes and must meet additional conditions to obtain a special use permit.  Id. §§ 13-6, 13-311(a)(14).  Notably, a SLH will not receive a permit if it is within 650 feet of another SLH or a state-licensed substance treatment facility.  See id. §§ 13-311(b)(6). And the SLH must require residents' participation in recovery programs, prohibit the use of alcohol and non-prescription drugs, and exclude any visitors under the influence of alcohol or drugs. Id. § 13-311(a)(14)(ii)–(v).

Plaintiffs object to the new, additional restrictions that the Ordinance places on pre-existing SLHs.  Plaintiffs allege that the new restrictions harm Plaintiffs because there are fewer housing opportunities for disabled individuals in the City post-Ordinance.  Furthermore, Plaintiffs allege that the City has subjected them to additional discriminatory and unlawful treatment.

## A.   Lynn House

Plaintiff California Women's Recovery, Inc. operates Lynn House.  (Docket No. 191 ¶ 240.)  Lynn House is an all-women SLH located in an R-1 district; therefore it is subject to the Ordinance.  (See id. ¶¶ 240, 272.)

On December 1, 2014, a City code enforcement officer, Mike Tucker ("Tucker"), investigated Lynn House for a noise complaint.  (See id. ¶¶ 269–271.)  On April 8, 2015, Lynn House applied for a special use permit.  (Id. ¶¶ 273.)  It also requested a reasonable

---

on their bedroom doors; members of the household have separate food storage facilities, such as separate refrigerators." Id.

[5] A "sober living home" is a group home for individuals "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law." CMMC § 13-6. Sober living homes do not include residential care facilities or sober living homes operating as a single housekeeping unit. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 14-01852 JVS (JCGx)                Date   July 13, 2018

Title   Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa

accommodation.  (Id.)  Lynn House asked the City to classify the facility as a single housekeeping unit; alternatively, it asked the City to waive the six-person occupancy limit on SLHs to allow it to have 12 residents.  (Id.)  In response, the City requested additional information, which Lynn House did not provide.  (Id. ¶¶ 275–77.)  The City ultimately denied Lynn House's request.  (Id. ¶ 280.)  On September 28, 2015, it cited Lynn House for lacking a permit.  (Id. ¶ 283.)

In February 2016, a resident of Lynn House had a seizure and 911 was called. (Id. ¶ 286.)  The Costa Mesa Fire Department responded and went through the house, opening bedroom and bathroom doors without knocking, counting the beds.  (Id.)  Within eight hours, Tucker arrived at Lynn House to respond to a complaint about the number of beds.  (Id. ¶ 289.)

On February 10, 2017, the City granted Lynn House's reasonable accommodation request.  (Id. ¶ 301.)  Lynn House received a letter from the City, dated October 25, 2017, informing it that it had ongoing obligations under CMMC § 13-311 update the City on certain information.  (Id. ¶ 304.)

**B.     Yellowstone**

Yellowstone operates four SLHs in Costa Mesa.  (Docket No. 193 ¶ 39.)  Three are located in R-1 zones and are licensed by California Department of Health Care Services, including a SLH referred to as "Boston House."  (Id.)  Yellowstone applied for a reasonable accommodation for Boston House to be treated as a single housekeeping unit or to allow it to house more than six residents, which was denied.  (See id. ¶¶ 23, 27.)  In 2013 and 2014, the City conducted warrantless probation and parole checks of Boston House.  (See id. ¶¶ 14–18.)  Additionally, on August 11, 215, the City conducted a search of Boston House pursuant to an inspection warrant.  (See id. ¶¶ 30–35.)

**II.  LEGAL STANDARD**

Summary judgment is appropriate where the record, read in the light most favorable to the non-movant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim[.]") (internal quotation marks omitted).

Material facts are those necessary to a claim's proof or defense; they are determined by the substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.[6]

The moving party bears the initial burden to establish the absence of a material fact for trial.  Anderson, 477 U.S. at 256.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed."  Fed. R. Civ. P. 56(e)(2).  Furthermore, "Rule 56[(a)][7] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Therefore, if the non-movant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

### III. DISCUSSION

#### A.    Requests for Judicial Notice

The City, Lynn House, and Yellowstone request that the Court take judicial notice of certain documents.  (City's RJN, Docket No. 136; City's Second RJN, Docket No.

---

[6] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[7] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

142; Plaintiffs' RJN, Docket No. 175; Supp. RJN, Docket No. 194.)  The City objects to the Court taking judicial notice of Plaintiffs' exhibits 11 and 12 to their RJN.  (Docket No. 195.)

Under Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute" if it is "generally known" in the jurisdiction or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court may take judicial notice of matters of public record if the facts are not subject to reasonable dispute.  Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002); see Fed. R. Evid. 201(b).  Additionally, courts "can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies." Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015); see also Michery v. Ford Motor Co., 650 Fed. App'x 338, 342 n.2 (9th Cir. 2016) (granting a request for judicial notice of the existence of documents available on a government website).

Exhibits 11 and 12 are not proper subjects of judicial notice because their accuracy can reasonably be questioned.[8]  (See Docket No. 195 at 4.)  However, the Court takes judicial notice of all other requested documents.  They are either government websites, municipal ordinances and codes, public records, government-compiled statistics, or records from government proceedings

### B.    Motion for Summary Judgment against Lynn House

1.    Reasonable Accommodation Claim

a.    Lynn House's reasonable accommodation claim is not moot.

The City argues that Lynn House's reasonable accommodation claim became moot

---

[8] The documents are ostensibly print-outs from the U.S. Census Bureau, American Factfinder website.  (See Plaintiffs' RJN, Docket No. 175-2, Exs. 11–12.)  However, the City raises sufficient questions as to the exhibits' reliability for the Court not to take judicial notice of the documents.  (See Docket No. 195 at 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |

once the City granted its reasonable accommodation request. (Mot., Docket No. 134 at 16.) However, a defendant's voluntary cessation of a challenged practice does not generally render a challenge to that conduct moot. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. (citing United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)).

The City has not satisfied this heavy burden. The City states that the Municipal Code provides that a SUP that is issued based on the grant of a reasonable accommodation is not subject to revocation. (City's First RJN, Docket No. 136, Ex. A at 12–13, Ex. E.) However, the Code provides multiple grounds upon which a SUP may be revoked. (See id., Ex. A at 12–13.) The City continues to impose the terms of the Ordinance on Lynn House. In October 2017, the City sent a letter to Lynn House advising it that under CMMC § 13-311(a)(1) it must provide the city with updates if certain information was no longer current. (Docket No. 170-6, Ex. 40 at 1237–38.) It also advised Lynn House that it had specific obligations related to evicting residents and involuntary termination of residency as set fort in CMMC § 12-211(a)(10)–(12). (Id. at 1237.) The City also notified Lynn House that it was required to notify the City's Network for Homeless Solutions if a resident was evicted or her residency was otherwise involuntarily terminated. (Id.) Finally, the City advised Lynn House that as an operator it was responsible for complying with the Code. (Id.) The SUP may be revoked for any significant or repeated violations of CMMC § 13-331. Therefore, the City has not established that Lynn House's reasonable accommodation could not reasonably be expected to be revoked.

The City argues that Lynn House has not established why it would be inappropriate for the City to revoke the SUP for violations of the Ordinance. (Reply, Docket No. 189 at 7–8.) While it might be perfectly appropriate for the City to revoke the SUP later on, the possibility of such a revocation firmly establishes that this case is not moot.

b.      Lynn House failed to exhaust its administrative remedies, but a genuine dispute of material fact exists as to whether it would have been futile to do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

The City argues that Lynn House's failure to exhaust its administrative remedies bars its reasonable accommodation claim. (Mot., Docket No. 134 at 14–16.)  Lynn House does not argue that it exhausted its administrative remedies, but rather that it was not required to do so to bring this claim.  (See Opp'n, Docket No. 172 at 24–28.)

"To prevail on a reasonable accommodation claim, plaintiffs must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question." Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 578–79 (2d Cir. 2003) (citing Oxford House–C v. City of St. Louis, 77 F.3d 249, 253 (8th Cir.1996)).  However, plaintiffs need not seek a reasonable accommodation if an ordinance is facially discriminatory.  Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 734–35 (9th Cir. 1999).  Additionally, plaintiffs "need not resort to them if such resort is manifestly futile." United States v. Vill. of Palatine, Ill., 37 F.3d 1230, 1234 (7th Cir. 1994).

Lynn House argues that the exhaustion of administrative remedies is only required when a plaintiff sought reasonable accommodations with respect to the application of previously existing, neutral zoning requirements.  (See Opp'n, Docket No. 172 at 25.)  The Court has already dismissed with prejudice any facial claim against the Ordinance that Lynn House might have.  (Min., Docket No. 60 at 10.)  The Court has allowed Plaintiff to raise a claim that the Ordinance does not truly benefit the disabled based on allegations of discriminatory intent.  (Docket No. 106 at 8–9.)  However, this has not altered the Court's earlier conclusion that the Ordinance is not facially discriminatory.  (Min., Docket No. 60 at 10.)

Even though Lynn House has not exhausted its administrative remedies, it was not required to do so if "such resort is manifestly futile." Vill. of Pallatine, 37 F.3d at 1234.  Lynn House provides evidence that the City has granted only one request for reasonable accommodation with respect to the Ordinance requirement, and denied all nine others. (Brancart Decl., Docket No. 176 ¶ 64; Docket No. 167-1, Ex. 2 at 58.)  Additionally, it argues that the denial of Yellowstone's reasonable accommodation request, which included "voluminous evidentiary support," justifies a finding of futility.  (Opp'n, Docket No.172 at 27.)  The City argues that the fact that once it had the requisite information about Lynn House it granted the SUP application shows that the reasonable accommodation request was not futile.  Additionally, it contends that because a reasonable accommodation analysis must be driven by the facts, the denial of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 14-01852 JVS (JCGx)                    Date    July 13, 2018

Title    Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa

Yellowstone's application has no bearing on the futility of Lynn House's application. (Reply, Docket No. 189 at 6.)

Lynn House produces sufficient evidence to create a genuine dispute of material fact sufficient to preclude summary judgment for the City on the reasonable accommodation claim. A reasonable juror could conclude that it would have been futile for Lynn Hose to pursue its reasonable accommodation request because all other applications have been denied. Therefore, the Court **denies** the City's motion as to this claim.[9]

> 2.    Disparate Impact and Disparate Treatment Claims[10]

> a.    Lynn House has standing to challenge of the Ordinance.

The City contends that because Lynn House was deemed essentially a "single housekeeping unit" and granted its accommodation request, and because its SUP in not subject to revocation, Lynn House no longer has standing to challenge the Ordinance and its disparate impact and disparate treatment claims should be dismissed as moot. (Mot., Docket No. 134 at 18.) The City argues that Lynn House has already received its requested relief and has identified no cognizable injury that this Court can remedy. (Reply, Docket No. 189 at 4.)

Pursuant to Article III of the Constitution, the Court's jurisdiction over the case "depends on the existence of a 'case or controversy.'" GTE Cal., Inc. v. FCC, 39 F.3d 940, 945 (9th Cir. 1994). A "case or controversy" exists only if a plaintiff has standing to bring the claim. Nelson v. NASA, 530 F.3d 865, 873 (9th Cir. 2008), rev'd on other grounds, 131 S. Ct. 746 (2011). To have standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

---

[9] Accordingly, the Court does not consider Lynn House's argument that the reasonable accommodation findings required by the City in the Ordinance themselves violated the FHA. (See Opp'n, Docket No. 172 at 27.)

[10] In its replies, for purposes of this motion and its motion against Yellowstone, the City abandoned its argument based on legitimate government interests. (See Reply, Docket No. 189 at 1 n.1; Reply, Docket No. 190 at 1 n.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision." Friends of the Earth, 528 U.S. at 180–81; see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); Nelson, 530 F.3d at 873. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013) (citation and internal quotation marks omitted).

Lynn House has standing based on the following injuries: (1) the time Operations Manager Joni Codd ("Codd") spent in preparing the SUP application; (2) and the disruption in Lynn House's day-to-day operations and fundraising. The City maintains that the time Codd expended is insufficient to constitute an injury-in-fact. (Reply, Docket No. 189 at 8.) Codd testified that she spent approximately two to three weeks on the first phase of the application, and an additional forty hours on the second phase. (Docket No. 167-1, Ex. 6 at 208.) "Diverted staff time is a compensable injury." Pac. Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1166 (9th Cir. 2013) (citing Walker v. City of Lakewood, 272 F.3d 1114, 1124–25 (9th Cir. 2001)). In Pacific Shores, the Ninth Circuit found that the "substantial time, effort, and resources" spent applying for SUPs and reasonable accommodations constituted an injury sufficient to main a claim. Id. at 1156. The City attempts to distinguish Pacific Shores, arguing that the case involved an ordinance that on its face treated disabled persons worse than similarly situated non-disabled persons and that the plaintiff facilities expended hundreds of hours of staff time in preparing SUP applications. (Reply, Docket No. 189 at 10.) The Court sees no reason to so limit Pacific Shores. The Ninth Circuit "recognized that it is unlawful discrimination to subject individuals to 'the rigors of the governmental or administrative process . . . with an intent to burden, hinder, or punish them by reason of their [membership in a protected class.]'" Pac. Shores, 730 F.3d at 1164 (alteration in original) (quoting Flores v. Pierce, 617 F.2d 1386, 1391 (9th Cir. 1980)). The Court sees no reason to doubt why requiring Lynn House to expend between 120 and 160 hours of staff time in applying for the SUP would not amount to "forc[ing] the applicants to undertake extraordinary measures." See Flores, 617 F.2d at 1391.

Additionally, Lynn House has submitted evidence that it suffered financial injury as a result of the Ordinance: (1) in 2016 Lynn House was not as full as it had been previously or as it was in 2017 because Codd was afraid Lynn House would shut down (Docket No. 167-1, Ex. 6 at 229), and (2) it cut back on fundraising activities in 2016 because it was concerned that it would close (Id., Ex. 7 at 245; Codd Decl., Docket No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

171-5, Ex. 49 ¶ 27). These are additional injuries that Lynn House suffered as a direct result of the Ordinance.

In sum, Lynn House has standing to challenge the Ordinance.

        b.    Lynn House presents sufficient evidence to challenge the Ordinance.

The City argues that Lynn House fails to provide evidence of a disparate impact, either through statistical analysis, expert opinion, or evidence that there has been an overall decline in housing opportunities. (See Mot., Docket No. 134 at 19; Reply, Docket No. 189 at 10.) Lynn House responds that it need not employ expert testimony to prove its disparate impact claim. (Opp'n, Docket No. 134 at 21.) To state a prima facie case under a disparate impact theory, a plaintiff must show that "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." Gamble v. City of Escondido, 104 F.3d 300, 306 (9th Cir. 1997) (quoting Pfaff v. U.S. Dep't of Hous. & Urban Dev., 88 F.3d 739, 745 (9th Cir. 1996)). A plaintiff must set forth "statistics or other proof" demonstrating that the challenged practice had a "significantly adverse or disproportionate impact" on a protected group. Id.

Lynn House argues that the FHA is concerned with the foreclosure of housing opportunities. (Opp'n, Docket No. 172 at 32 (citing Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, 2516 (2015); Ave. 6E Invs., LLC v. City of Yuma, Ariz., 818 F.3d 493, 509 (9th Cir.), cert. denied, 137 S. Ct. 295 (2016)). Lynn House provides evidence that a significant number of group homes closed as a result of the Ordinance. (See Docket No. 170-2, Ex. 20 at 1181, 1184–85; RJN, Docket No. 175-1, Exs. 7–8.) The City responds that Lynn House's evidence fails to take into account the nearly 100 state-licensed recovery facilities in the City's residential zones. (See Docket No. 191 ¶ 216; Supp. RJN, Docket No. 194-1, Ex. 1.) Therefore, the City argues, Lynn House's evidence does not address the change in the total number of recovery beds in Costa Mesa. (Reply, Docket No. 189 at 10.) However, the City cannot defeat Lynn House's disparate impact claim by showing that there are other similar housing opportunities in the general area. See Ave. 6E, 818 F.3d at 509. The Ordinance only applies in the City's R-1 districts. (RJN, Docket No. 136, Ex. A.) The City's evidence does not address whether the total number of recovery beds increased in the R-1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

districts. Simply showing whether the total number of recovery beds went up across Costa Mesa is not enough to defeat Lynn House's disparate impact claim.

Regardless, Lynn House fails to provide statistical evidence or expert testimony to substantiate its disparate impact claim. Though "[s]ummary judgment is appropriate when statistics do not *support* a disparate impact analysis," Pottenger v. Potlatch Corp., 329 F.3d 740, 749 (9th Cir. 2003), the absence of statistical evidence or expert testimony is not necessarily fatal to a disparate impact claim. In Gamble, the Ninth Circuit, found that the plaintiff failed to establish a prima facie case of disparate impact because he presented "no statistics or other proof" demonstrating a significantly adverse impact. 104 F.3d at 306. The court found that the denial of permits for large houses on small lots in single family neighborhoods only established a discriminatory effect on group living. Id. at 306–07. However, the court noted that "[i]f a significant correlation exists between being disabled and living in group houses, a disparate impact on group housing could conceivably establish a prima facie disparate impact claim." Id. at 307 n.2. Because no such evidence had been presented, the Court found the plaintiff's claim insufficient. Here, unlike in Gamble, Lynn House need not present any statistical evidence because the Ordinance only applies to group homes occupied by disabled individuals.

Additionally, in Idaho Aids Foundation, Inc. v. Idaho Housing & Finance Ass'n, 422 F. Supp. 2d 1193, 1203 (D. Idaho 2006), a district court found that statistical evidence or evidentiary proof of discriminatory impact was not required where the challenged practice only impacted a protected class. Facially, the Ordinance benefits disabled individual because it provides them with "alternative housing opportunities that do not exist to others under the preexisting general ban on large boardinghouses in R-1 zones." (Min., Docket No. 60 at 10.) But it only applies to groups homes occupied by disabled individuals. (RJN, Docket No. 136, Ex. A.) Therefore, like the plaintiff in Idaho Aids Foundation, Lynn House does not necessarily need statistical evidence or expert testimony for its disparate impact claim. The evidence presented is sufficient to create a genuine dispute of material fact as to whether the Ordinance had a significantly adverse impact on disabled individuals.

Therefore, the Court denies the City's motion for summary judgment of Lynn House's disparate impact claim.

3.     42 U.S.C. § 1983 Claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |

| | |
|---|---|
| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |

An individual may sue a local government under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). However, a plaintiff cannot use a respondeat superior theory to sue a governmental unit under § 1983. Id. at 691. This rule imposes liability on municipalities for "acts that are, properly speaking, acts of the municipality." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (internal quotation marks omitted). Such liability requires a showing that (1) the plaintiff was deprived of a constitutional right, (2) the local government entity had a policy, (3) that policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations and internal quotation marks omitted). In addition, "a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." Long v. Cty. of Los Angeles, 442 F.3d 1178, 1189 (9th Cir. 2006).

The City argues that Lynn House's allegations are insufficient to establish a claim under § 1983. (Mot., Docket No. 134 at 22.) Lynn House maintains that it sufficiently alleges a claim under § 1983 based on the City's policy of targeting sober living homes. (Opp'n, Docket no. 172 at 32.) Lynn House presents evidence that Tucker went to Lynn House on two occasions. The first visit was on December 1, 2014, after a noise complaint. (Tucker Decl., Docket No. 134-2 ¶ 9.) As part of his investigation, Tucker researched Lynn House on the internet and found an advertisement for "Women's Big Book Study" on Mondays. (Id. ¶ 10.) During his visit he discussed the complaints, suggested "good neighbor" practices, and talked about the new group home SUP process. (Id. ¶ 11.) The second visit came after Costa Mesa Fire Department responded to a 911 call at Lynn House. (Codd Depo., Docket No. 167-2, Ex. 6 at 209–10.) Firefighters went through the house and counted the number of beds present. (Id.) Tucker returned to Lynn House within eight hours. (Id.) Codd would not let Tucker in. (Id.) Tucker eventually left and took no further action. (Tucker Decl., Docket No. 134-2 ¶ 15.)

Lynn House argues that the City's response to the 911 call constituted an unlawful search in violation of the Fourth Amendment. (Opp'n, Docket No.172 at 33.) The Fourth Amendment protects against warrantless searches of the home. See Kyllo v. United States, 533 U.S. 27, 31 (2001). However, "[i]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 14-01852 JVS (JCGx) | | Date | July 13, 2018 |

| | |
|---|---|
| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |

Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).  Nevertheless,"the 'plan view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."  Id. at 466.  Still, the doctrine may be used to "legitimate action beyond" the scope of the "exigencies which justify its initiation."  Arizona v. Hicks, 480 U.S. 321, 325–26 (1987) (quoting Mincey v. Arizona, 437 U.S. 385, 393 (1978)).  Searches conducted pursuant to the plain view doctrine must be supported by probable cause.  See id. at 327–28.  Additionally, "warrantless entry for emergency reasons . . . cannot be used as the occasion for a general voyage of discovery unrelated to the purpose of the entry."  United States v. Johnson, 410 F.3d 137, 145 (4th Cir. 2005) (quoting United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992)).

The City argues that the firefighters were on Lynn Houses's premises to respond to a call for assistance and, during the course of providing that assistance, they identified a potential fire code violation in plain sight.  (Reply, Docket No. 189 at 11.)  Lynn House does not contest that the City firefighters were validly on the premises.  But the City cites no evidence showing (1) what fire code violations were discovered; (2) how those violations were in plain sight; or (3) how the firefighters had probable cause to search the rest of the house for violations.  Therefore, Lynn House's unrebutted evidence raises a question of fact as to whether the Costa Mesa Fire Department's search was unlawful.

To state a claim under Monell, Lynn House must show the alleged constitutional violation was "caused by 'a policy, practice, or custom of the entity,' . . . or be the result of an order by a policy-making officer."  Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (internal citation omitted).  A policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 1143 (citation omitted).  However, a municipality's inaction can also create a policy.  Id.  To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights.  Gibson v. Cty. of Washoe, 290 F.3d 1175, 1193–94 (9th Cir. 2002), overruled on other grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016).

Lynn House presents evidence that after Tucker's second visit, internal emails

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |

| | |
|---|---|
| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |

between code enforcement officers provide that

> We may want to do some in service training to outline exactly how much information the [Fire Department] crews should gather while they are responding to a call. It is also a good idea to let the crews know that they are usually be[ing] recorded on video and audio when they are in the house.
>
> Let me know if you want me to put something together for the training.

(Docket No. 170-5, Ex. 20 at 1230.)  This is sufficient to raise a question of fact as to whether the firefighters gathered information pursuant to an official policy or, at the very least, the City was deliberately indifferent to the firefighter's conduct. Therefore, the Court **denies** the City's motion for summary judgment of Lynn Houses's § 1983 claim.[11]

### C.    Motion for Partial Summary Judgment against Yellowstone

####        1.    Standing

The Court previously held that Yellowstone lacks standing to challenge the Ordinance as it applies to unlicensed facilities.  (See Min., Docket No. 60 at 7.) However, Yellowstone has standing to bring claims for injuries that it in fact suffered. (Id.)

####        2.    Reasonable Accommodation claim

The City argues that Yellowstone failed to meet its burden of showing that its accommodation request was both necessary and reasonable.  (Mot., Docket No. 140 at 13.)  Yellowstone argues that its request was both necessary and reasonable because Boston House functioned a single housekeeping unit, the Ordinance as applied to

---

[11]  Because Lynn House has defeated the City's motion on this ground, the Court does not address its other alleged constitutional violations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

Yellowstone's request violated the FHA, and the City applied the incorrect standard in determining Yellowstone's request for reasonable accommodation. (Opp'n, Docket No. 179 at 7–13.) Yellowstone fails to explain how the Ordinance as applied violated the FHA, but the Court considers its remaining arguments in turn.

> a.   Whether Boston House functioned as single housekeeping unit presents a question of fact.

The City argues that Boston House did not function as a single housekeeping unit under either the previous definition of the term or the definition found in the Ordinance. (Reply, Docket No. 190 at 4.) Ordinance 13-05, amending CMMC 13-6, provides the following definition single housekeeping unit:

> *Single housekeeping unit* means that the occupants of a dwelling unit have established ties and familiarity with each other, jointly use common areas, interact with each other, share meals, household activities, lease agreement or ownership of the property, expenses and responsibilities; membership in the single housekeeping unit is fairly stable as opposed to transient, and members have some control over who becomes a member of the single housekeeping unit.

(Plaintiffs' RJN, Docket No. 175-2, Ex. 15.)  The Ordinance provides the current definition of single housekeeping unit:

> *Single housekeeping unit* means that the occupants of a dwelling unit have established ties and familiarity with each other, jointly use common areas, interact with each other, share meals, household activities, and expenses and responsibilities; membership in the single housekeeping unit is fairly stable as opposed to transient, members have some control over who becomes a member of the household, and the residential activities of the household are conducted on a nonprofit basis. There is a rebuttable presumption that integral facilities do not constitute single

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

housekeeping units. Additional indicia that a household is not operating as a single housekeeping unit include but are not limited to: the occupants do not share a lease agreement or ownership of the property; members of the household have separate, private entrances from other members; members of the household have locks on their bedroom doors; members of the household have separate food storage facilities, such as separate refrigerators.

(RJN, Docket No. 142, Ex. A.)

Yellowstone argues that the following facts establish that Boston House is a single housekeeping unit:

The Boston House has been occupied by persons in recovery since at least 2000. PAMF 1. It is a large house, containing six bedroom covering 2,500 square feet of living space. PAMF 3. None of the bedroom have locks on the door; residents use the front door to enter and exit the home. PAMF 7. Inside the home, residents cook, eat and clean together. Residents are not allowed to keep separate food containers. PAMF 4. Each household member has a set of assigned chores and each is required to behave in accordance with household standards: No drug or alcohol, no foul language, smoke in the designated smoking area in the backyard, treat every visitor, household member and neighbor with respect. PAMF 6. Electronics are restricted and no resident has a personal vehicle. PAMF 10. Throughout the day, residents attend group meetings and socialize together throughout the day. PAMF 6, 9. One aim of these daily, communal interactions with other people in recovery help them to establish ties that are crucial to their journeys in sobriety. PAMF 6.7. Residents can remain part of the household for as long as needed so long as they abide by the house rules and contribute to the household. PAMF 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

(Opp'n, Docket No. 179 at 8.)  The City argues that the following facts show that Boston House is not a single housekeeping unit:

> The residents have no relationship with one another before moving in. They have no say in who becomes a member of the household. They have no shared lease or ownership of the property. [SUF #34]. According to Yellowstone's Operations Manager, Jason Brewer, the residential programs last just 10 to 90 days. [Pl. Comp. Ex. 5, Dep. of J. Brewer at 88:2 – 89:10].

(Reply, Docket No. 190 at 4.)  These factual disputes are not appropriate for resolution on a motion for summary judgment.  A genuine dispute of fact exists as to whether or not Boston House operated as a single housekeeping unit.[12]

      b.     Whether Yellowstone's request to house up to fifteen residents was both reasonable and necessary presents a question of fact.

The FHAA requires a municipality "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [individuals with disabilities] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).  "Congress intended the FHAA to protect the right of handicapped persons to live in the residence of their choice in the community." City of Edmonds v. Wash. State Bldg. Code Council, 18 F.3d 802, 806 (9th Cir. 1994), aff'd sub nom. City of Edmonds v. Oxford House, Inc., 514 U.S. 725 (1995).  To prove that an accommodation is necessary, "[p]laintiffs

---

[12] At the hearing on the motion, the City argued that Yellowstone "dropped its contention that it was a single housekeeping unit at its appeal of the denial or its reasonable accommodation request hearing before the City's Planning Commission."  (Docket No. 191 ¶ 66. (citing Lindsay Decl., Docket No. 140-1, Ex. G at 12:22–13:07, 13:22–14:7, 69:6–9).)  Yellowstone contests that it made such a concession.  The Court finds that the cited evidence does not show an unequivocal waiver of its position that Boston House functions as a single housekeeping unit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." Giebeler v. M & B Assocs., 343 F.3d 1143, 1155 (9th Cir. 2003) (quoting Smith & Lee Assocs., Inc. v. City of Taylor, Mich., 102 F.3d 781, 795 (6th Cir. 1996)). "Put another way, '[w]ithout a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation.'" Id. (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1381 (9th Cir. 1997) ("Cal. Mobile Home II"). Necessity "requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995) (cited by the Ninth Circuit in Gamble, 104 F.3d at 307). Reasonable accommodations do not require "changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program." Bryant Woods Inn, Inc. v. Howard Cty., Md., 124 F.3d 597, 604 (4th Cir. 1997) (quoting Alexander v. Choate, 469 U.S. 287, 301 n.20 (1985)). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994).

The City argues that none of the evidence provided by Yellowstone shows that housing more than six residents was necessary to provide a therapeutic environment. (Mot., Docket No. 140 at 15.) Yellowstone presents evidence showing that current and former Boston House residents received therapeutic benefits from living with up to thirteen residents with up to two managers. (Lindsay Decl., Docket No. 140-4, Ex. G.) The City also argues that Yellowstone's evidence does not show that but for accommodating thirteen to fifteen residents, the Boston House residents would not be able to live in the residence of their choice in the community. (See Mot., Docket No. 140 at 14–16.) However, Yellowstone submits sufficient evidence that the number of residents had a "direct linkage" to the "equal opportunity" to create a genuine dispute of material fact. See Bryant Woods, 124 F.3d at 604. In sum, Yellowstone's evidence is sufficient to raise an inference that the City's policy has a causal link to Yellowstone's injury. See Cal Mobile Home II, 107 F.3d at 1381. Additionally, it satisfies the minimum required showing that the desired accommodation ameliorated the effects of their disability. See Bronk, 54 F.3d at 479.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

Additionally, the fact that Boston House had been a residence for up to 15 individuals since 2001 is sufficient to create a genuine dispute as to whether the requested accommodation would change the fundamental nature of the City's R-1 zones.[13]  (Brewer Decl., Docket No. 178-1, Ex. 3 ¶ 2.)

In sum, the Court **denies** the City's motion for summary judgment as to Yellowstone's reasonable accommodation claims.

3.      Disparate Impact Claim

The Court tentatively granted the City's motion for summary judgment as to Yellowstone's disparate impact claim because Yellowstone failed to provide evidence to suggest that there has been an overall decline in housing opportunities for disabled individuals throughout Costa Mesa.  CMMC § 13-30 limits the occupancy of residential care facilities throughout the city's residential zones to six residents.  (See Lindsay Decl., Docket No. 140-3, Ex. 3 at 23.)  After the hearing on the motion, the Court requested that Yellowstone provide supplemental briefing and evidence of an overall decline.  (See Min., Docket No. 2018.)  Arguing that this case concerns the City's treatment of persons in recovery in R-1 zones, Yellowstone presented evidence that there has been an overall decline in housing opportunities for disabled individuals in R-1 zones.[14]  (See Docket No. 213 at 2–3; Docket No. 213-2, Exs. 1–5.)

The allegations of disparate impact in the FAC concern the closure of sober living homes in the R-1 zones and the City's tentative approval of only a small number of group home permits since the enactment of the Ordinance.  (See FAC, Docket No. 109–111.)  Plaintiffs also allege that the Ordinance has created or increased segregated housing patterns in Costa Mesa by steering sober living

---

[13] The City contends that such an argument seeks a reward for flouting the law.  (Reply, Docket No. 190 at 6.)  However, Boston House operated with a license for 15 residents from the Department of Health Care Services.  (Brewer Decl., Docket No. 178-1, Ex. 3 ¶ 2.)  Moreover, regardless of whether they complied with the law, it is undisputed that Boston House had operated with up to 15 residents.

[14] The City submitted a reply to this evidence, though no reply was requested.  (Reply, Docket No. 214.)  The Court denies Yellowstone's request that it strike this unsolicited reply.  (See Docket No. 215.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
|---|---|---|---|

| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa |
|---|---|

homes away from R-1 neighborhoods.  (Id. at 113.)  However, as discussed above, Yellowstone is neither a group or sober living home.  See CMMC § 13-6.  It qualifies as a residential care facility under the Ordinance.  See id.  Yellowstone does not purport to have organizational standing to bring this claim based on any injury to its residents.  Instead, it brings this claim on behalf of itself.  The Court has already determined that Yellowstone cannot challenge the Ordinance based on injuries it did not suffer.  It is not subject to the Ordinance's group home regulations.

Accordingly, the Court **grants** the City's motion for summary judgment on this claim.

4.    42 U.S.C. § 1983 Claim

The City argues that Yellowstone cannot base its § 1983 claim on the alleged illegal traffic stop experienced by staff member Jodi Franco.  (Mot., Docket No. 140 at 23.)  A constitutional violation is required to support Monell liability. Hayes v. Cty. of San Diego, 736 F.3d 1223, 1231 (9th Cir. 2013).  "[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."  Samson v. California, 547 U.S. 843, 857 (2006). Yellowstone does not contest that two parolee residents were present in the car during the traffic stop.  Therefore, the traffic stop did not amount to a constitutional violation.[15]  In sum, the Court **grants** the City's motion for partial summary judgment as to this basis of Yellowstone's claim.

IV. CONCLUSION

For the foregoing reasons, the Court **denies** the City's motion for summary judgment of Lynn House's claims.  The Court **grants in part** and **denies in part** the City's motion for partial summary judgment of Yellowstone's claims.

**IT IS SO ORDERED.**

---

[15] The Court therefore does not address the City's arguments that Yellowstone lacks standing to premise its § 1983 claim on this interaction.  (See Mot., Docket No. 140 at 23.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01852 JVS (JCGx) | Date | July 13, 2018 |
| Title | Yellowstone Womens First Step House, Inc., et al. v. City of Costa Mesa | | |

| | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | kjt | | |